IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Betty Ann Singleton, )
)
    Plaintiff, )
) Civil Action No. 0:10-2540-SB
v. )
)
Michael J. Astrue, Commissioner ) **ORDER**
of Social Security, )
)
    Defendant. )



Plaintiff Betty Ann Singleton ("the Plaintiff" or "Singleton") brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI").

In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), the record includes the report and recommendation ("R&R") of United States Magistrate Judge Paige J. Gossett. In the R&R, Magistrate Judge Gossett recommends that the Court affirm the Commissioner's final decision denying benefits. The Plaintiff filed timely objections to the R&R, the Defendant filed a response to those objections, and the matter is ripe for review. See 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a magistrate Judge's R&R within fourteen days after being served with a copy).

## BACKGROUND

### I. Procedural History

The Plaintiff applied for DIB and SSI in July of 2006, alleging disability since December 1, 2005, due to rheumatoid arthritis, Sheehan's syndrome, heart problems,

anemia, low blood sugar, and high blood pressure. The Commissioner denied her applications initially and upon reconsideration. Thereafter, the Plaintiff filed a timely request for an administrative hearing, and on March 3, 2009, Administrative Law Judge ("ALJ") Nicole S. Forbes-Schmitt held a hearing. The Plaintiff, who was represented by her attorney, appeared at the hearing and testified. In addition, a vocational expert ("VE") appeared and testified. At the hearing, the Plaintiff amended her alleged disability onset date to January 1, 2007.

On September 25, 2009, the ALJ issued a decision finding that the Plaintiff was not under a disability as defined in the Social Security Act, as amended. Specifically, the Commissioner made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since January 1, 2007, the amended onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Sheehan's Syndrome and hypertension (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).



5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with no climbing of ladders/ropes/scaffolds and no exposure to workplace hazards.

6. The claimant is capable of performing past relevant work as a housekeeper and kitchen helper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under disability, as defined in the Social Security Act, from January 1, 2007[,] through the date of this decision (20 CFR 404.1520(f) and 416.920(g)).

(Tr. at 10-13.)

On September 25, 2009, the Appeals Counsel denied Singleton's request for review, making the decision of the ALJ the final action of the commission.

## II. Medical Evidence

Singleton was born in 1946 and was sixty years-old at the time of her amended disability onset date. She has a ninth-grade education and past relevant work experience as a housekeeper and kitchen assistant.

According to the medical evidence, Singleton was seen at Cardiology Consultants of Charleston by Dr. Joseph Salerno on November 25, 2003, where she underwent testing and completed nine minutes of the Bruce protocol before stopping secondary to fatigue.

On March 24, 2006, she was again seen at Cardiology Consultants, and an echocardiogram showed minimal mitral regurgitation. During a nuclear stress medicine test, Singleton exercised for eight minutes and twenty seconds on the Bruce protocol stage 2 without chest pain.

In findings dated May 2, 2006, Dr. Salerno noted that Singleton had a long history of pituitary insufficiency, a history of resting bradycardia (low heart rate), and endocrine abnormalities. Dr. Salerno noted that Singleton had complained of increased fatigue, and he ultimately recommended 24-hour testing to evaluate her heart rate response.

Testing on June 27, 2006, revealed concentric LVH, hyper dynamic systolic function, and evidence of diastolic dysfunction. It was noted that Singleton's blood pressure returned to an elevated level post exercise. Singleton reported that she

discontinued taking Norvasc when her samples ran out.

On February 7, 2005, Singleton visited the Flowertown Family Physicians clinic in Summerville, complaining of abdominal pain and headaches, and she received iron tablets for anemia.

On March 27, 2006, Singleton was seen again at the Flowertown Family Physicians clinic, after being admitted to the hospital due to headaches and weakness. She reported that Clonidine tablets made her tired, and she was switched to a Cetapres patch. Singleton complained that Lipitor was too expensive for her, and it was recommended that she be placed on fish oil to help with her triglycerides.

On April 24, 2006, Ms. Singleton visited Flowertown Family Physicians and indicated that she had been hospitalized in Atlanta over Easter weekend for severe fatigue, secondary to elevated blood pressure and episodes of bradycardia and tachycardia. Singleton also complained of a lump in front of her right ear and was referred to cardiology for possible sick sinus syndrome. An in-office EKG showed some sinus bradycardia, and Singleton was referred to an ENT.

On June 2, 2006, Singleton presented at Flowertown Family Physicians complaining of muscle aches and dizziness. She expressed concern over feeling weak, especially in her arms and shoulders, but notes indicate that it was probably a virus. She received Ultram samples to try to manage her chronic arthritic type pain.

Singleton presented to the Summerville Medical Center on March 23, 2006, complaining of headaches and worsening weakness. She reported experiencing these symptoms for several days and stated that she felt dizzy and when she stood and was extremely weak. She rated her pain at eight out of ten. Her blood pressure was highly

4

elevated at 206/84. Notes from this visit state: "She has been noncompliant to medications in the past and she has quit taking the Cetapres patch she ordered." (Tr. at 266.)

On June 6, 2006, Singleton again presented to Summerville Medical Center complaining of dizziness.

A carotid artery duplex scan dated July 7, 2006, showed intimal bilateral thickening without significant areas of focal atheromatous. Measurements indicated stenosis in the 41 to 59 percent range on the left side and in the 0 to 40 percent range on the right.

Singleton was seen at the Endocrine Center on June 29, 2006. Her medical history referenced Sheehan's syndrome,[1] syncope, and fatigue. Her musculoskeletal exam revealed joint deformities.

In February of 2007, Adebola Rojugbokan, M.D., examined Singleton at the request of the State agency. Singleton complained of fatigue, dizziness, dry and itchy skin, and lack of energy or appetite. The results of a physical examination were essentially normal, with the exception of abnormal heel-to-toe walking and abnormal gait. Dr. Rojugbokan diagnosed Singleton with hypothyroidism, hypertension, history of Sheehan's syndrome, hyperlipidemia, and an unknown cardiac problem. Dr. Rojugbokan noted that Singleton was a very poor historian, and he noted that she was unable to follow-up with a rheumatologist due to lack of money or insurance.

The same month, Charles Fitts, M.D., a nonexamining State agency physician, reviewed the medical record, including Dr. Rojugbokan's medical report, and completed

---

[1] Also called postpartum hypopituitarism, Sheehan's syndrome is a condition that affects women who experience life-threatening blood loss during or after childbirth, causing oxygen loss and damage to the pituitary gland and resulting in the permanent underproduction of essential pituitary hormones.

a physical residual functional capacity assessment. Dr. Fitts concluded that Singleton was capable of performing medium work, i.e., she could occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; sit for about six hours in an eight-hour workday; and stand and/or walk for about six hours in an eight-hour workday. Dr. Fitts further concluded that Singleton could frequently climb ramps and stairs; never climb ladders, ropes, or scaffolds; and frequently balance, stoop, kneel, crouch, and crawl. Dr. Fitts noted no manipulative, visual, communicative, or environmental limitations.

A second State agency physician, Katrina Doig, M.D., reviewed the medical record in July of 2007 and concluded, like Dr. Fitts, that Singleton could perform medium work.

On March 4, 2007, Singleton was admitted to Trident Medical Center's emergency room complaining of chest pain and other nonspecific symptoms, including some total body fatigue, bilateral upper extremity pain and weakness, and some lightheadedness. Her pain was relieved by nitroglycerin, and her work-up was normal. A nuclear stress test on March 5, 2007, was essentially normal.

On May 4, 2007, Singleton was seen at the Franklin C. Fetter clinic, reporting of fatigue and lack of energy. She told staff she had not been to the clinic since her October 2006 visit due to lack of money. She missed her appointment on May 23, 2007, but on June 3, 2007, she again reported fatigue, and a lesion on her left arm was noted. On July 26, 2007, Singleton reported feeling "lightheaded and short of breath" for four or five days. She told staff she had not filled her prescription for blood pressure medication. Thereafter, she missed appointments on August 2, August 31, and September 25, 2007 (TR 413).

On October 17, 2007, Singleton appeared at the Fetter clinic with flu-like symptoms. Staff discussed her non-compliance and directed her to restart her medications. On

November 26, 2007, she complained of arthritis pain beginning four days prior. She was seen in follow-up on November 29, 2007, but she missed appointments on December 11 and December 12, 2007. On May 30, 2008, Ms. Singleton reported that she was out of blood pressure medication.

On June 8, 2008, Singleton reported to Trident for abdominal pain. Then, on October 25, 2008, she presented to the ER with chest pain, which she described as intermittent and waxing and waning. She reported difficulty breathing and nausea, but a chest x-ray was negative. She reported having been off of her medication for a week after misplacing it during a move. The final impression was chest pain, abnormal EKG, poor compliance, transient hypertension, and hyperventilation syndrome.

On December 28, 2008, and again in January 2009, Singleton visited the ER, each time for acute bronchitis. She reported to the ER again on February 8, 2009, complaining of headaches and dizziness.

### III. Administrative Hearing Testimony

At the March 2009 hearing, Singleton testified that she could not work due to Sheehan's syndrome, for which she required hormone replacement therapy. She testified that the hormone replacement therapy no longer helped and that she was tired and itched constantly. She also testified to heart problems, rheumatoid arthritis, and hypothyroidism. Singleton complained that her steroids no longer helped, but she admitted that medication could control her hypertension. However, she testified that she could not afford medication. Singleton claimed she had difficulty standing and walking because of dizziness but that she could try to stand for an hour or two. She claimed to be forgetful and asserted that she had to lie down all the time.

A VE also testified at the hearing. Specifically, the VE considered a hypothetical individual with the following limitations: medium work with no climbing of ladders, ropes, or scaffolds, and no exposure to workplace hazards. The VE concluded that the hypothetical individual could perform Singleton's unskilled, light past work as a housekeeper (Dictionary of Occupational Titles ("DOT") # 323.687-014) and kitchen assistant (DOT # 311.677-4 010).

## STANDARD OF REVIEW

I. **Judicial Review of a Final Decision**

The role of the federal judiciary in the administrative scheme as established by the Social Security Act is a limited one. Section 205(g) of the Act provides that, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether substantial evidence exists, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. Mastro v. Apfel, 270

8

F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## II. The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. Mathews v. Weber, 423 U.S. 261 (1976). The Court is charged with making a de novo determination of those portions of the R&R to which specific objection is made, and may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

## ANALYSIS

## I. The Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:



> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that the claimant can perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. Walls, 296 F.3d at 290.

Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, January 1, 2007. At the second step, the ALJ found that the Plaintiff had the following severe impairments: Sheehan's syndrome and hypertension. Third, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. Next, the ALJ found that the claimant had the residual functional capacity ("RFC") to perform medium work. Because the ALJ found that the Plaintiff could perform her past relevant work as a housekeeper and kitchen helper, she found that the Plaintiff was not under a disability.

## II. The Plaintiff's Brief

In her brief, Singleton raised the following issues for review:

I. The ALJ failed to consider the combined effect of impairments;

II. The ALJ performed a flawed credibility analysis; and

III. The ALJ performed a flawed RFC analysis by:

    A. failing to perform function-by-function assessment prior to determining RFC, and

> B. failing to compare the RFC to the physical/mental demands of her past work.

(Entry 17 at 1.)

## III. The Magistrate Judge's R&R

In the R&R, the Magistrate Judge considered each of the issues raised by the Plaintiff and ultimately determined that the Plaintiff had not shown that the Commissioner's decision was not supported by substantial evidence.

First, with respect to the Plaintiff's argument that the ALJ failed to consider the combined effects of the her impairments, the Magistrate Judge determined that the ALJ considered–in addition to the Plaintiff's severe impairments of Sheehan's syndrome and hypertension–the Plaintiff's nonsevere impairments of hypothyroidism, low blood sugar, gastritis, and renal insufficiency. The Magistrate Judge rejected the Plaintiff's claim that the ALJ failed to comply with the requirements of Walker v. Brown, 889 F.2d 47, 50 (4th Cir. 1989), and its progeny, and ultimately found that the ALJ provided sufficient discussion of the combined effect of the Plaintiff's impairments.

With respect to the Plaintiff's argument that the ALJ performed a flawed credibility analysis, the Magistrate Judge reviewed the evidence considered by the ALJ and found that substantial evidence supported the ALJ's decision to discount the Plaintiff's subjective complaints.

Next, with respect to the Plaintiff's argument that the ALJ performed a flawed RFC analysis, the Magistrate Judge found that the ALJ's RFC determination implicitly contained a finding that the Plaintiff is physically able to perform the functional requirements of medium work, subject to the additional limitation that there be no climbing of

11

ladders/ropes/scaffolds and no exposure to workplace hazards. The Magistrate Judge also found that the ALJ's decision to give significant weight to the state agency opinions was supported by substantial evidence.

Lastly, the Magistrate Judge concluded that the ALJ complied with the requirements of Social Security Ruling 82-62 when she determined that the Plaintiff could perform her past relevant work.

## IV. The Plaintiff's Objections

The Plaintiff filed written objections to the R&R asserting that the Magistrate Judge failed to properly consider each of her arguments. The Court will address each of the Plaintiff's arguments/objections in turn.

### A. The Combined Effect of the Plaintiff's Impairments

First, the Plaintiff objects to the Magistrate Judge's finding that the ALJ complied with the mandates of Walker and Hines v. Bowen, 872 F.2d 56 (4th Cir. 1989).

In Walker, the Fourth Circuit Court of Appeals evaluated whether an ALJ properly analyzed the cumulative effect of a claimant's impairments on his ability to work. 889 F.2d at 49-50; see also 42 U.S.C. § 423(d)(2)(B) (providing that the Commissioner of Social Security must consider the "combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity"). In Walker, the court stated:

> It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity. In recognizing this principle, this Court has on numerous occasions held that in evaluating the effect[ ] of various impairments upon a disability benefit claimant, the Secretary must consider the combined effect of a claimant's impairments and not fragmentize them.

12

> As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of impairments. In this case, the ALJ did not comply with these requirements and the claimant is entitled to have his claim remanded for proper consideration.

Id. (internal citations omitted); see also Hines, 872 F.2d at 59 ("It is also clear that the ALJ must adequately explain his or her evaluation of the combined effect of impairments."). Along these lines, it is clear that an ALJ must explicitly indicate the weight given to all relevant evidence.

Here, the ALJ found that the Plaintiff has the following severe impairments: Sheehan's syndrome and hypertension. (Tr. at 10.) The ALJ then noted that the Plaintiff has been assessed with hypothyroidism, low blood sugar, gastritis, and renal insufficiency, but the ALJ found these to be minimal impairments. Next, the ALJ simply stated that the "claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments . . . ." (Tr. at 11.) Other than this statement, the ALJ included no well-articulated explanation of her consideration of the combined effect of the Plaintiff's impairments. Furthermore, it is not entirely clear whether the ALJ intended to collapse her discussion of the combined effect of the Plaintiff's impairments with her subsequent discussion of the Plaintiff's RFC because the majority of the latter discussion addresses only the Plaintiff's severe impairments and credibility. As Judge Seymour noted in Alonzeau v. Astrue:

> Even if one could infer that the ALJ considered . . . the cumulative effect of all of Plaintiff's impairments from the ALJ's listing of various medical observations in his analysis of the Plaintiff's RFC, the ALJ failed to adequately explain his evaluation of any cumulative effects. As such, Plaintiff's claim should be remanded to the Commissioner for proper explanation of the ALJ's evaluation of the combined effect of Plaintiff's impairments with respect to whether Plaintiff's impairments meet a listing.

13

2008 WL 313786 (D.S.C. Feb. 1. 2008) (Seymour, J.) (unpublished).

After review, therefore, the Court disagrees with the Magistrate Judge on this issue and instead agrees with the Plaintiff that the ALJ failed to include a sufficient explanation of her consideration of the combined effect of the Plaintiff's impairments. Furthermore, the Court finds that such failure renders it impossible for the Court to determine whether substantial evidence supports the ALJ's decision.

B. The Plaintiff's Credibility

Next, the Plaintiff objects to the Magistrate Judge's analysis of her claim that the ALJ performed a flawed credibility analysis. Pursuant to Social Security Ruling 96-7p:

> The purpose of [ ] Ruling [96-7p] is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision.

S.S.R. 96-7p. Furthermore:



> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996); see also, 20 C.F.R. § 404.1529(b); S.S.R. 96-7p; and 61 Fed. Reg. 34483-01 and 34484-85. A claimant's symptoms, including pain, are considered to diminish a claimant's capacity to work to the extent the

14

alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

To reject a claimant's testimony regarding pain, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." S.S.R. 96-7p; 61 Fed. Reg. at 34486.

The Plaintiff's arguments on this issue appear to go to the second step of the analysis, namely, the ALJ's evaluation of the extent to which the Plaintiff's pain affects her ability to work, as determined by considering the evidence and the Plaintiff's testimony. Specifically, the Plaintiff asserts that the ALJ erred in assessing her credibility by drawing negative inferences from her noncompliance with medical treatment, in violation of S.S.R. 96-7p and 20 C.F.R. § 416.930.

In the R&R, the Magistrate Judge disagreed with the Plaintiff and thoroughly analyzed the ALJ's observations and findings on this issue to determine that substantial evidence supports the ALJ's credibility analysis. The Magistrate Judge reviewed the ALJ's references to the medical evidence that did not support the Plaintiff's complaints, for example, the fact that the Plaintiff had not required significant medical treatment for Sheehan's syndrome or the fact that the records showed sporadic visits seeking

15

medication refills, missed appointments, and admitted non-compliance with her medications. The ALJ also noted that although Singleton's work activity following the amended onset date did not amount to substantial gainful activity, it did indicate that her daily activities had, at times, been greater than she reported.

The Court has reviewed the R&R in conjunction with the ALJ's decision, and ultimately, the Court agrees with the Magistrate Judge that the ALJ provided specific reasons (supported by the evidence in the record) for her decision to give less weight to the Plaintiff's statements. In addition, the Court agrees with the Magistrate Judge that the record contains sufficient evidence to support the ALJ's finding that financial reasons were not always the root of the Plaintiff's lack of compliance with medical recommendations. After consideration, therefore, the Court adopts the Magistrate Judge's findings on this issue, and the Court overrules the Plaintiff's objection.

C. The Plaintiff's Residual Functional Capacity

As the Magistrate Judge pointed out, an individual's RFC is "the most [the individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545. "The RFC assessment considers only functional limitations and restrictions that result from an individuals' medically determinable impairment or combination of impairments, including the impact of any related symptoms." S.S.R. 96-8p.

In this case, the ALJ found that the Plaintiff could perform medium work with no climbing of ladders/ropes/scaffolds and no exposure to workplace hazards. Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). A review of the ALJ's decision indicates that she did not perform a specific function-by-function analysis.

16

The Magistrate Judge reviewed the ALJ's RFC determination and found no error in the ALJ's failure to perform a specific function-by-function analysis. The Magistrate Judge noted that the only evidence supporting the determination that the Plaintiff could perform medium work was found in the state medical consultants, and she found that no other medical evidence indicated any additional limitations.

The Plaintiff contends that the ALJ erred by failing to adequately explain her RFC assessment. The Plaintiff writes in her objections:

> [T]he Magistrate found that the ALJ's RFC implicitly contained findings as to each applicable function (R&R 13). The regulations make clear that a simple recitation of a claimant's supposed abilities is, by itself, insufficient. SSR 96-8p mandates that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." The RFC must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" This makes clear that Ms. Singleton's argument was not merely that the ALJ did not *list* each of the functions involved in her RFC finding but that she did not *explain* them.

(Entry 24 at 3.) In addition, the Plaintiff pointed out that the state agency opinions—the only evidence supporting the RFC determination—were completed in 2007 on less than the entire record before the ALJ.

Here, after consideration, the Court agrees with the Plaintiff that the ALJ's RFC determination is flawed, first, because the ALJ failed to make any particular findings with respect to the functional requirements of medium work, and second, because even if the ALJ did make such findings, the Court cannot determine whether substantial evidence supports those findings because the decision contains no narrative discussion or explanation of the Plaintiff's functional limitations and/or how they affect her ability to perform work. Accordingly, the Court sustains the Plaintiff's objections and declines to

17

adopt the R&R with respect to this issue.

## CONCLUSION

In conclusion, the Court declines to adopt the R&R (Entry 23) in full and instead adopts it only to the extent that it is consistent with this order. Next, the Court sustains in part and overrules in part the Plaintiff's objections (Entry 24), as indicated in the above discussion. Finally, for the reasons set forth herein, the Court reverses the Commissioner's denial of benefits under sentence four of 42 U.S.C. § 405(g) and 1383(c)(3) and remands the matter to the Commissioner for further consideration, and, specifically, for additional explanation of (1) the combined effect of the Plaintiff's impairments and (2) the Plaintiff's RFC assessment.

**AND IT IS SO ORDERED.**

Sol Blatt, Jr.
Senior United States District Judge

March 29, 2012
Charleston, South Carolina



## ADDENDUM

Should this remand result in the award of benefits, plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. ***This Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.***[2]

---

[2] This language was taken from Stutts v. Astrue, 489 F. Supp. 2d 1291, 1295 (N.D. Ala. 2007).